Our next case is number 2012-1299 SHARP ELECTRONICS v. ARMY. Well, reading it may be one thing, construing it may be another. One way to look at it would be to think if the decision will have implications not just for this dispute but for any current and future contracts that might arise under the base, what I'll call the base contract terms and conditions, if it would have universal impact, then you might assume it should go to the GSA officer. And I think that's correct. And that was the point I was trying to make, perhaps inartfully. You know, what you're talking about are questions that arise independently of this particular case. You're talking about ambiguities in the base contract. You're talking about questions of validity in the base contract. These are fundamental issues for which the ordering agency has no real position to make a decision. I mean, we're talking about issues relating to formation of base contracts. The ordering agency wasn't a part of that. But don't, I mean, even if we assume that the construction of this clause means that it only goes to the GSA if there's a need to construe a provision of the base contract, aren't we in that situation here that there needs to be a construction of the termination provision of the base contract? I would submit you only need to do that if the dispute challenges the interpretation of the particular provision. And I don't think that that's what occurs in this case. I need to understand a little bit better what your theory is here. Do I understand correctly that you're not challenging the ability of the Army to enter into a contract with you for less than an option year? In theory, no. I would think that the contractor may enter into an accord in that session, or the contractor may waive the termination provisions. But I think that the fact and circumstances need to support that finding. I don't really understand that answer. What I understood happened here was that the government had an option period of a year. They could have exercised the option period. They did not exercise the option period. Do you agree with that? I would agree with that. So they instead entered into a contract with your client for a six-month additional period, correct? That is correct. I guess I would take a step back. The option that you were discussing is part of the contract. So we have, and I realize that it's framed in terms of an option, but you have to read that option in conjunction with terms of the base contract. Can we look? We're talking about lease term. Under the GSA base contract, there's nothing in there about options. It says the lease term can't exceed 36 months for desktops or 60 months for consoles. Correct. So as far as GSA is concerned, that's the length of the contract is stated right there. GSA doesn't care whether you want to have a three-year contract for consoles or a five-year contract or to have a base year and option years. Well, I believe the way that the base contract is written is that you have to have a minimum of 36 and a maximum of 60. Oh, yeah, I understand. And that the lease term, the total lease term is determined by the base contract, by the ordering contract. Right. And in this case, they place a four-year contract. So that third option year with the fourth year of the lease, that is still part of the original contract that was set in year one. And that's why they have to, they're presumed to need to continue to lease that for all 48 months. They didn't do that here. I understood your question to be asking, is there any set of circumstances where they could do that and not have the termination apply? And I would say yes. We don't think that that happened in this case. To come back to whether or not, and I think it's very important for us to know whether or not you contest the legitimacy of the shortened option period. Because in your break to the Armed Services Contract Board, you contended that you weren't bound by that. You made an argument that it really wasn't your intent to limit yourself to the six months of performance. It was a convenience for the government, something like that. Now, come back to the question that the presiding judge posed. We have in the record, mod 11, that's a bilateral modification. How do we treat that? Is that a valid contract whereby you agreed to a performance of shorter than a year? Well... Yes or no? That's the question for the board to decide. I'm asking you, what's the answer? I would say that it is valid insofar as it stands, but you have to read in context of the base contract, which... You're not helping me. If it's correct that there's no question, but you bound yourself to a performance period shorter than a year, bound yourself, and cannot complain about it. Well, I don't agree with that. Well then, what is your basis for complaining? And you didn't, in your brief to us, you didn't say that. Well, because I don't believe that's the issue. The issue is, what is the nature of the dispute? The board said, look what we've got here. We've got a situation where the government had the right, if it wanted to, just to chop the last year off entirely as their option. They said, we can't go a full year, so we're going to chop you off or we'll give you a half year, your choice. And you said, thanks a bunch, we want the half year. And so the way the board looked at that is to say, you unilaterally bound yourself to a period of performance of six months. And yet you're still arguing that the termination provision of the GSA contract applies to this? It was saying, doesn't GSA have to be the one to decide whether they will allow the benefits of an early termination to apply in a circumstance where there has been no early termination? That was, to me, the way they were framing the question. And so unless you can get off the hook. I think we get off the hook by challenging the characterization that what we did would bind ourselves to a lesser term. When I heard it, you made that argument in your brief. I know you made the argument somehow in to the armed services contract. I believe that goes to the merits of the case. You can't bound yourself to a six month term. You're not disputing that, are you? I'm saying that we agreed to the contract, but I don't think that that means... You agreed to a six month term. Whatever the consequences of that might be, you agreed to a six month term, right? Our agent signed the contract, yes. The question is, what is the legal significance of that? Is that in accordance with that? Did he waive termination? You're not contending that the government exercised the full option here, right? I am not contending that. Okay. So this seems to be an agreement that's outside of the option provision, whereby the parties agreed to extend the contract for a six month additional. And I understand your contention to be, and you can correct me if I'm wrong, is that that led to a early termination claim. Correct. The termination says, If the government terminates the contract before the end of the full lease term, before the 48 months expire, then the contractor is entitled to early termination charges. Now the fact that we signed the delivery order for less than a full year raises the question, did we waive that? You're not contending, are you, that the government had the obligation to exercise the options, are you? It was not obligated to, but the way the base contract is drafted, it has limited circumstances which allow it to not exercise that option without incurring the termination cost. And those limited circumstances are? If the activity is discontinued, if there are no appropriations made to the activity. So you're saying that apart from those circumstances, they had to exercise the option? Yes. Okay. That sounds sort of like a construction of the base contract. Well, I submit that that's not really what the issue in this case was. The issue was, what was the legal effect of Sharp signing the delivery order for less than the full year on the final option? And I think that you can't resolve that without looking at what took place between the parties in executing that six-month EO. What took place in the three months that followed that? They then issued a second mod, mod 12. What does all this mean? Was there a waiver? Was there an accordance satisfaction? If the answer to that is no, then I think the termination clause applies. It's mechanical. I don't think there's any dispute as to what the termination clause means, how it operates. It's unambiguous. Okay. I think we're out of time. We'll give you two minutes for rebuttal. Thank you. Mr. Jabbour, is that an answer correct? Good morning. May it please the Court. I want to cover two issues today. And the first is the issue that this Court has discussed with Mr. Weibel, which is, does this dispute relate to the terms and conditions of the Scheduled Contract or does it relate to performance of the delivery order? And then the second issue is, what are the jurisdictional implications of the answer to that first question? I take it that you probably would agree that this case involves both the construction of a base contract and the purchase order, right? And it's certainly Model 11 of that. That's correct. I don't think there's any dispute. And is your position that if, in any respect, you have to construe the base contract, that it has to go to the GSA contracting officer? If there's a legal construction issue of the terms and conditions of the base contract, then yes, it has to go to GSA. Even though there are performance issues and constructions of the purchase order and all that, but if there's any part of it, you say, that involves the construction of the base contract, it has to go to GSA. That's correct. If there's a legal interpretation issue, then it doesn't need to go to GSA. And the reason that this Court highlighted with Mr. Weibel is really the appropriate one, which is that if there's an issue that's going to be affecting multiple agencies under the Scheduled Contract, then GSA should be issuing uniform legal interpretations of the Scheduled Contract. We don't know whether it will uniformly affect other contracts until we know what the interpretation of the base contract has to be in order to resolve this particular conflict. In other words, the trigger for this conflict does not find itself in the base contract. The trigger for this conflict comes out of the way in which they wrote the delivery order and then the way in which they agreed to change the delivery order. We don't yet know whether any of that will actually implicate a particular construction or change in the base contract, so we don't yet know whether there's going to be implications for the entire contracting world of GSA. Why shouldn't we read, I think we would all agree that 8.406-6 is probably a classic example of bad drafting. But let's try to make what we can out of it. Why shouldn't we read B sub V to say, the ordering activity contracting officer shall refer all disputes that relate solely to the contract terms and conditions to the Scheduled Contracting Officer for resolution under the disputes clause of the contract and notify the Scheduled Contractor of the referral. That is to say, shouldn't the GSA contracting officer, who doesn't have any first-hand knowledge of what's going on in the actual delivery contract, shouldn't that officer be concerned only when there is a real question about the underlying contract? I agree with Your Honor, but I think that proposal becomes a little bit difficult to administer in that there can only be one contracting officer's final decision. So in other words... You're agreeing that the word only should be right in there? No, I apologize if I made it sound like I was agreeing with that. That was not what I was agreeing with. I was simply saying that there can only be one contracting officer's final decision, and so you can't separate out a dispute that calls for, or an issue that calls for a legal interpretation of the Scheduled Contract from factual Issues. They're all part of the same dispute. You can't have, for instance, the GSA contracting officer issuing a decision only regarding legal interpretation questions, and then the Army contracting officer issuing a separate contracting officer's final decision. There can only be one. So if there are any legal interpretation issues,  And would that be almost every dispute? Because the delivery contract builds on the underlying base contract as a matter of law. And I thought this regulation was designed to relieve the GSA contracting officer of having to deal with every dispute that comes along, and it creates a system under which the ordering activity contracting officer may issue final decisions on disputes arising from performance of the order. This is clearly a dispute arising from performance of the order. It may also be a dispute involving the terms of the underlying base contract. But the regulation says on disputes arising from performance of the order. Or he can refer the dispute to the Scheduled Contracting Officer, which seems, as I think Judge Clevenger noted, or one of the other judges noted, seems to undercut the whole point of the exercise, but that's besides the point. The ordering activity contracting officer shall notify the Scheduled Contracting Officer promptly of any final decision. Well, that suggests that the ordering activity contracting officer can make a final decision that has implications for the scheduling, the Scheduled Contracting Officer, and then notify him that that's what he's done. How do you understand this relationship to actually work? Well, my understanding is that the relationship is that typically a contractor is going to go to their ordering activity contracting officer first. As he did here, yes. Right, exactly. That's who they're most familiar with. That's their point of contact. They're going to go to that person first. So they did the right thing in going there to begin. I'm not going to make a judgment about whether or not they did the right thing. That's the way the model works. That's the way the model works. That's typically the way it'll work. Okay, we're not going to pin you down on this particular one. Go ahead. And then, ordinarily, the disputes, I would think in many instances, actually do only concern facts of performance. For instance, in this case, there could have been a dispute. There wasn't. But there could have been a dispute that SHARP delivered the right copiers, that they delivered them on time. These are solely performance issues. Just like in GTSI, the dispute was, did the agency have sufficient funds? Truly a fact issue. In Spectrum, did they perform 24-7? Were they required under the delivery order to perform 24-7? Again, solely a fact issue. There are cases, though, and this is one of them, where the appellant, SHARP, has invoked a legal interpretation question. Okay, in a nutshell, what is the dispute pertaining to the terms and conditions of the Schedule of Contracts? Well, as SHARP has framed it, Tell me what it is. Well, their dispute is that they say that the terms What's the GSA contracting officer going to have to decide? What's the question? Does the discontinuance provision entitle SHARP to termination charges where there's been a bilateral modification of the option period? That's the dispute. If the parties bilaterally agree to modify the term of their delivery order Or stated differently, does the early termination clause pertain to a contract that has been terminated voluntarily by the parties? That has been voluntarily terminated, right. It was terminated because it had an end date. Right. I mean, if you said this contract is over on a certain date, it's terminated. Well, the parties bilaterally agree to only partially exercise an option period. I don't know that we phrase it in terms of termination. So what happens now? If they lose this case, if we were to affirm, are they in a position then to go to the GSA contracting officer and raise this? Yeah, absolutely. They're not prohibited. They have five years, don't they? They have six years. Six years. Right. So they're not time barred from doing so. They can go to the GSA contracting officer and seek a decision. And then if they're not satisfied with that decision, they're free to take an appeal to the Court of Federal Claims or the Civilian Court of Contract Abuse. The way this provision is written, it looks as though the Army contracting officer should have referred the dispute to the GSA contracting officer. Yeah. What about that? I agree in the normal course that's what should happen. But we are confronted here with a situation where there was no action by the Army contracting officer. Well, the first problem is that when you go to the DO contracting officer, that officer has to decide whether is this one a performance issue or is this an interpretation issue. And, of course, humans being as they are, they can make mistakes. So the DOCO could have said, well, I think this is a performance issue and it's a no-brainer. I'm not even going to write an opinion. The guy's not entitled to any money. He agreed to end the contract. So it gives him a deemed denial. There's no assurance in the way this thing is written, especially where the DO contracting officer can ship a performance issue if he wants to to the other side, that there will be any certainty. No, that's right. How do we get certainty? How do we stop this line of cases? I'm not sure it's easy, but you are correct. It's as much in your interest as it is in the interest of the contractors and of the court. No, I understand. And I do think that part of it is that when a contractor is invoking a provision in the schedule contract and is potentially calling for an interpretation of it, which I think if Sharp was honest about its claim, that is what they were doing here. It wasn't the government that was invoking the schedule contract. Look, if we just want to look at MODS 11 and 12 on their own and not even look at the schedule contract, that's obviously perfectly fine with the Army. We're content to stand on MODS 11 and 12 alone. It was Sharp that invoked the terms and conditions of the schedule contract. Well, is that important? I mean, as a matter of laying down a rule of law, is it important? If you say, okay, if you invoke a clause in the schedule contract, you're on the way to the GSA. No, I think it's more than invoking. I mean, I think it's really that you... It builds up the grounds for an opinion. Sure, that you're asking for an interpretation of a term or condition of the schedule contract. But look, if there is any doubt, I think the easiest thing to do is to file your claim with the GSA contracting officer if you feel like there could be a legal interpretation issue of the schedule contract. Well, sure, you can cure all this by filing both places. It's just a matter of a copying machine that copies your claim and puts a different addressing on it, right? Right. But the whole notion of duplicating the whole system with two contracting officers being coupled with this thing and then possibly two of those going to three different boards seems crazy, doesn't it? I'm not sure if it's crazy. I do think that... It's good for lawyers, but who else? Well, I think that there is a burden on the contractor to analyze his claim and figure out where that claim is supposed to go. Let's assume in this case he analyzed his claim and said this is a dispute over the delivery contract because the delivery contract said a full year. We've agreed to make it six months, but under the termination clause of the contract, we're entitled to some compensation for that. So he looks at that and he says, well, that's clearly part of our delivery contract, isn't it? And his lawyers say, yeah, that seems to be the case, and we look at the disputes provision, and it says under the disputes clause, ordering activity contracting officer may do two things. He may either issue a final decision or he may refer the dispute to the scheduled contractor. So the lawyer looks at that and says, oh, well, this is easy. We give it to the ordering activity contracting officer because it comes in his ballywick. If he doesn't think so, if we're wrong, then he'll kick it over. That's a very logical thing for them to do. But if your ordering activity contracting officer didn't kick it over, he decided it. Now, he decided it negatively by simply not doing anything, but that's being decided. Is there no obligation? Is there no consequence for that? The consequence is that I agree in these situations where there is a deemed denial. The contractor is left in a difficult situation. And the solution, if they don't want to go to the ASPCA, is to seek an opinion from the GSA contracting officer whether or not that was a valid deemed denial. But I think it's tricky on the contracting officer's end as well because, as Judge Clevinger pointed out earlier, the contracting officer is under no assurance that even if he or she issues a decision, the Army contracting officer could issue a decision, and then SHARP could come back later and say, this concerns the terms and conditions of the Schedule of Contract. We don't think your decision is valid. And that's exactly what happened in SHARP's dispute versus the Navy. The Navy contracting officer issued a decision, and then SHARP came back and said, sorry, we actually don't think you had jurisdiction to issue that decision. If I understand your position, and tell me if I'm wrong about this, your position is that all disputes that require construction of the base contract have to go to the GSA, point one. And point two, that this case involves such a dispute because they're saying that the termination provision applies to situations like this, and you say it doesn't, right? Right, there's a dispute over interpretation, correct. Right, so I think really this, I understand that this regulation may not provide answers in the small segment of cases where there is a potential deemed denial. There can be tricky issues. But even where a contracting officer does affirmatively issue a decision, there's potential risks in that situation as well. So there are situations that you can envision where both the contractor and the contracting officer are put in difficult predicaments. If you were counseling a contractor who said, where do we file? What would you counsel them? I would counsel them to file at the place where, if they're confident it deals with a performance issue, then go to the ordering activity contracting officer. They're going to be the one. Deals with a performance issue or deals only with a performance issue? Deals only with a performance issue. The ordering activity contracting officer will be the one who's best equipped to handle that dispute. Even if there's actually any doubt, I think that's the appropriate way to go. And then if you don't get a decision in 60 days, or a referral within 60 days, I think the appropriate thing to do is to reach out to the GSA contracting officer. That's what your problem is. Almost all performance issues ultimately relate to a particular clause in the contract. So performance, did you use the right color paint? Did you do it on time? So there's a contract. Everything is done pursuant to the contract. So when there's a performance dispute, it relates at least to the contract that the contracting CO put out. And then there's this overarching GSA contract that matches up almost every key term. It's just not as detailed. This is kind of the classic legal-factual distinction. What is a legal dispute and what is a factual dispute? And in litigation, lawyers are called to make these judgments all the time. But I think the bottom line is there is a simple way forward. A simple way forward is simply file with your ordering agency contracting officer. Normally there will be a referral or there will be a decision. The legal-factual dispute won't work because when you're having a factual dispute, it's keyed back to what the legal size of the contract requirement was. There can be a potential legal issue, but I think in a lot of cases it's going to be a pure factual issue. This isn't GTSI and Spectrum. I think you can say safely those were pure factual issues. The difficulty I have with your saying that is that by definition, every delivery order is built on the underlying contract because it's the underlying contract that authorizes the delivery orders. You cannot have a delivery order contract that doesn't basically incorporate the underlying contract by definition. So that every time there's going to be a dispute about a delivery order, unless the dispute is did you use pink paper, I don't know how often that dispute comes up. But I would think you all would be concerned about this problem because it's clear that there's an enormous overlap between these two contracting officers. And do you really want them to go to both in order to protect themselves? Is that the system? No, our preference is that they go to their ordering activity first and that in these rare instances where they don't get a decision and they think there might be a legal interpretation issue, then to ask for a referral or to check with GSA first. But I agree. I agree with Mr. Weibel in one sense and that's that there must be a category of cases that the ordering activity contracting officer is authorized to decide. I want to clarify one thing. Charles said in his brief that it was impermissible for it to go to the GSA contracting officer. It's sort of like it's against the law. As Sharp interprets this regulation, 84066, they say the law requires me to go only to the delivery order contracting officer. I can't go anyplace else. Now, I didn't see you in your brief come back and give him any comfort. Are you prepared to tell us today that a contractor in this circumstance is free always to go to either the GSA contracting officer or the DO? Yes, that's correct. There's no prohibition on going to the GSA contracting officer. And, indeed, under the pre-2002 version of the regulation, this was a situation that a few boards of contract appeals encountered. And they said if you, it's your job to make sure you have proper jurisdiction before going to a board. So if you don't get, it's your responsibility to make sure you go to that GSA contracting officer. And there were numerous situations inside of the centennial and grant cases where the ordering activity would issue a final decision, contractor would appeal it, and then the board of contract appeals would say it's incumbent on you to go to GSA because that ordering activity never had the authority to issue a final decision. The problem is simple. There's one contract board you would go to regardless of which contracting officer you went to. We saw one of those cases where the party in question wasn't quite sure, so he filed with the EEOC case. So they filed both with the EEOC contracting officer and with the GSA contracting officer. Lost both, appealed both, and then one of them got himself kicked out. But our problem of this dancing around is greater when there's more than one contract board you have to go to. No, that's correct. And again, I do think there's an easy way forward, and that easy way forward is to file with your ordering agency first. And I think these deemed denials are rare. This regulation has been in effect for a decade now, and this is the first case that we've seen on it. It's not the first case. There are four prior cases. No, but in terms of a deemed denial. So this situation is rare, and I think in this situation, a contractor has a few options. They can do it sharp tip, but they can also go and check with the GSA contracting officer to determine whether or not they feel that the legal information... Do you think the deemed denial triggers this problem? Ordinarily, the EEO would make some sort of decision that people could then act on. Exactly. You'd refer it if it involved the base contractor. That's exactly right. I think this situation where the ordering agency contracting officer does not act does put the contractor in a difficult position. Beyond our authority to take deemed denial out of the ballpark in these settings? I mean, so deemed denial is a little radical, but I mean one way to solve this problem is to say, well, in a situation where you have a GSA contract and then you have a delivery order underneath it in that setting and we can define those settings very easily, we say when a claim is filed with a contracting officer, he cannot do a deemed denial. He must answer. Well, that's part of interpreting this regulation. The issue, though, is that if we don't do it, why don't you do it? Well, the problem, though, is that there's a jurisdictional issue here in that the Army contracting officer, any decision that he or she issues, if that dispute related to the terms and conditions of the sale of the contract, any decision that that contracting officer issues is a legal nullity. The Army contracting officer is not empowered to issue any sort of decision. Well, the reasoning was that instead of getting a deemed denial, the Army contracting officer here should have said, hey, you're in front of the wrong guy. This involves interpreting the GSA contract going over there. Right. That's exactly right. And the issue is when that doesn't happen, what are the consequences? Yeah, so I was saying, well, why don't we just make him always make that decision? I'm sorry? Why don't we just make the contracting officer make that decision and say you don't get to do a deemed denial? Not one of your options. Certainly, I don't know that we have any particular objections to it. I just don't know how that would work. When this went before the Army contracting board, wouldn't that have been a good opportunity for the government to say, hold it, let's go back and start over, rather than say no jurisdiction? Well, I'm not sure that's an election that's within the government's options. I think that's actually an option that SHARP has to say, let's take this back to the Army contracting officer. But once the Army contracting officer doesn't act, the CDA says that's a deemed denial. So we can't take away that deemed denial. SHARP certainly could have, but we couldn't do it. Thank you, Mr. Gibraltar. Thank you very much. Mr. Weibel, you have two minutes. Let me ask you, when you got this decision from the BCA here, why didn't you just say, okay, we don't care. We'll go over to the GSA contracting officer. Precisely because of a question that Judge Clevenger raised, which is how do we stop these cases from happening? We deal with this all the time. And it's incredibly unpredictable. In this case, we had two competent legal counsel who agreed. They looked at the facts. They looked at the law. They said we're in the right place. All you want is certainty. You want some certainty. And I'd like to briefly say that your brief certainly, I applaud you for your creativity. Your brief says you'd like certainty. You'd like to have deemed jurisdiction, if you will, in a situation like this. Well, I'll leave that for the brief, Your Honor. I think you have certainty from this discussion. The certainty is that you better go to both contracting officers to cover yourself. Well, and I would submit that that is an unreasonable. You could have cured your problem here. Right. By going to the GSA. Sure. Well, I don't think. I mean, I realize you came here for your client, and the client's willing to pay to try to get a ruling that's going to help clear all this up. But you, for less money, you could have cured your client's problem by just going to GSA contracting officer. Well, I think, you know, we would have had GSA contracting officer. You don't like the GSA contracting officer? We have no problem with the GSA contracting officer. I just want to briefly, in the few moments I have remaining, say that this question has been resolved by the ASPCA in prior decisions, specifically the spectrum resources case. That's not a fact question. The issue there was can the ordering activity contracting officer apply termination standards on the GSA schedule? The answer to that question was yes. Again, in the GTSI case, same question. So can they apply termination clauses of the GSA schedule to the facts of the case? And both said yes. And I'm out of time. Okay. Thank you very much. Thank you.